**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Jerry APPLEWHITE,
Defendant/Appellant.**

**No. 54580.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 23, 1989.

Rehearing Denied June 21, 1989.

Doris Gregory Black, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

SATZ, Judge.

Defendant, Jerry Applewhite, was convicted by a jury of robbery in the second degree, § 569.030 RSMo 1986, two assaults in the second degree, § 565.060 RSMo 1986, and assault in the third degree, § 565.070 RSMo 1986. He was sentenced to concurrent sentences of 18 years imprisonment on the robbery, 15 years on each of the assaults, second degree, and 9 months on the assault, third degree. He appeals. We affirm.

Defendant contends the state failed to make a submissible case on each charge. To determine the issue of submissibility, we review the evidence most favorably to the state, accepting as true all facts and reasonable inferences tending to support the conviction and disregarding evidence and inferences to the contrary.[1] *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983).

1. Defendant's counsel on appeal was not his counsel at trial. Defendant's appellate counsel must take the record as she finds it and so must we.

On the afternoon of March 31, 1987, defendant and two companions, Michael Isom and Lorenzo Jones, drove to the Schnucks supermarket located at 12305 Natural Bridge in Bridgeton, Missouri. Isom and defendant entered the store, leaving Jones behind in the car.

Dennis O'Neal, the store manager, saw two paper bags full of cigarettes near defendant and became suspicious. O'Neal told another employee, John Tucker, to watch the two men and to call the police. O'Neal then went to the store's exit doors and waited. Tucker saw defendant lift up his coat and "put two or three [cartons of cigarettes] ..., in the back of his pants, behind his coat."

Defendant and Isom walked through the check-out lanes, toward the exit doors, without paying. Each of them was carrying a bag of cigarettes. O'Neal stepped in front of them and said, "Wait a minute, guys. You didn't pay for those cigarettes." At that point, with O'Neal blocking the door, defendant and Isom hesitated, then, still holding the bags, they "made a run for it." O'Neal said, he "was pushed aside", "knocked up against the [door]", and, although he grabbed Isom and defendant, they swung their arms and knocked his arms away.

O'Neal and Kevin Roach, a grocery clerk, chased defendant and Isom into the parking lot. Defendant got into the passenger seat of the car in which Jones was seated. Jones started the car and began to drive away. O'Neal stood directly in front of the car and tried to attract the attention of a police car. The suspects' car came right at O'Neal, who had to jump out of the way to avoid being hit. The car then collided with an arriving Bridgeton police car and, after the collision, continued out of the parking lot into oncoming traffic on Natural Bridge. Cars screeched to a halt. Isom, who had jumped onto the hood of the suspects' car, was thrown to the pavement. Defendant did not get out of the car while it was stopped. Isom, however, climbed into the car. The car then continued down Natural Bridge, with the police car, its siren and red lights activated, in pursuit.

During the chase that followed, the suspects' car reached a speed of 60 miles per hour and, at one point, used the shoulder to pass another vehicle. At another point, the suspects' car was forced to stop, but, again, defendant did not get out of the car. Traveling east, the suspects' car drove into a ditch on the south side of the road in order to pass a slower moving car. The suspects' car then crossed back over the eastbound lane and collided head-on with a westbound car containing Glenn and Bonnie Yansen, both of whom sustained serious injuries.

Defendant, who admits stealing the cigarettes, was arrested and charged with second degree robbery, two counts of assault, second degree for the injuries to the Yansens, and assault, third degree for the suspects' car traveling directly at Dennis O'Neal. After a jury trial, defendant was convicted and sentenced on all four counts. This appeal followed.

■ Defendant first contends there was insufficient evidence of physical force to support his conviction for robbery, second degree. We disagree.

A person commits second degree robbery when he "forcibly steals property", § 569.030 RSMo 1986, and "a person 'forcibly steals'"

> when ... he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking;
>
> § 569.010(1) RSMo 1986.

Our statutes do not define the term "force" itself nor do they define the quantum of "force" necessary to constitute forcible stealing. This standard, however, has been judicially determined. *State v. Harris*, 622 S.W.2d 742 (Mo.App.1981).

In *Harris*, the defendant, while escaping from a store, "shoved" a department store security guard "with her shoulder ... not an accidental bump ... [but] like a football player" and also pulled the stolen clothes from the guard's grasp. *Id.* at 745. The

court held this conduct constituted sufficient "force" to support the charge of robbery, second degree. *Id.*

In the present case, O'Neal, the store manager, testified:

"... I was pushed aside, ... as they went back past me, you know, they were running past me, I had ahold of them, and they just kind of knocked me off, and I got knocked up against the [door], and they just went on through the door."

He also said he grabbed Isom and defendant, but, he said, they swung their arms and knocked his arms away.

Defendant attempts to distinguish these facts from those in *Harris* by the bald assertion that the force used against O'Neal was "more akin to a 'bump'" and the contact was "similar to an 'accidental' contact as defendant and Isom tried to get out of the door, rather than an intentional act of force." This assertion implicitly turns the scope of review on its head. We view the evidence and inferences most favorably to the state, not to defendant. E.g., *State v. Brown, supra* at 699. O'Neal's testimony supports the inference that defendant's conduct was not accidental but was intentional to overcome O'Neal's resistance to the theft. Moreover, the impact on O'Neal's person was sufficient force to support the submission of the charge to the jury. As noted in *Harris,* it is not even necessary that the victim be touched to support a submission of forcible stealing under § 569.030. *Id.* at 745.

■ Defendant also contends there was insufficient evidence to submit the charges of assault, second degree to the jury. His argument is focused on the requisite mental element. He relies on testimony of two of the state's witnesses who said the suspects' car was "out of control" when it came out of the ditch and collided with the Yansens' car. Citing this testimony, he contends there was no evidence "that de-

fendant acting with Jones, the driver, intentionally, purposely, feloniously or recklessly struck the Yansens' car for the purpose of causing them serious physical injury."

A person commits the crime of assault in the second degree if he

. . . . .

(3) Recklessly causes serious physical injury to another person;

§ 565.060 RSMo 1986.

A person "acts recklessly" or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

§ 562.016.4 RSMo 1986.

One of the police officers testified he pursued the suspects' car in his police car with the siren and red lights activated. While being pursued, the suspects' car traveled at speeds up to 60 miles an hour, passing slower vehicles on the right by using the shoulder and a ditch. Such driving constitutes a conscious disregard of an unjustifiable risk and a gross deviation from the standard of care that a reasonable person would use. The resulting head-on collision demonstrates the risk and the consequences of disregarding it. An opinion the car may have been "out of control" just before the collision is beside the point. The jury could reasonably infer the reckless driving caused the car to go out of control and injure the Yansens.[2]

■ Defendant next attacks the indictment as being fatally defective. First, defendant argues the omission of the word "feloniously" renders the charges of assault, second degree in the indictment defective. Defendant relies on *State v. Vonderau,* 438 S.W.2d 271, 272 (Mo. banc

2. The indictment charges:

[Defendant] acting with others ... recklessly caused serious physical injury [to each of the Yansens] by colliding head on with [their] automobile ... while defendant was fleeing from ... police officers.

Jones was the driver of the car. Defendant, however, does not raise either the issue of imputing Jones' culpable mental state to defendant, a passenger, or the issue of the proof of defendant's culpable mental state without this imputation. Therefore, we do not address either of these issues.

1969), in which the Court stated "the use of the word 'feloniously' is necessary [in charging a felony], for the very sufficient reason that its use informs the accused of the nature or grade of the crime he is alleged to have committed." Defendant's reliance on *Vonderau* is misplaced.

If *Vonderau* is still viable under our present Criminal Code, its requirement that the defendant be informed of the grade or nature of his crime was met by the present indictment. Both second degree assault charges provide the statutory section number and expressly state that defendant "committed the *Class C felony* of assault in the second degree...." (Emphasis added) Obviously, this allegation fully apprised defendant and his trial counsel of the nature and grade of the offenses charged. The omission of the word "feloniously", thus, does not render the indictment defective. See *State v. Barkwell*, 590 S.W.2d 93 (Mo.App.1979).

■ Defendant also contends that Count I was fatally defective because the charge of robbery, second degree did not contain the word "willfully". The discussion above applies equally to this contention. Moreover, the charge of robbery, second degree tracks the language of the approved charge. See MACH–CR 23.04. Compliance with the form approved by the Supreme Court satisfies the requirements of Rule 23.01(b). See *State v. Burch*, 740 S.W.2d 293, 294–5 (Mo.App.1987).

■ Defendant also challenges the trial court's denial of his request for a mistrial which his counsel made during his cross-examination. On direct examination, defendant admitted three prior guilty pleas and the sentences he received for those crimes. During cross-examination, after defendant attributed blame to Isom and Jones for the crimes in this case, the prosecutor proceeded:

Q. So what's your fault?

A. My fault is stealing the cigarettes with Michael Isom.

Q. In fact, you always commit crimes with other people, don't you?

[Defense Counsel]: I object, your Honor.

The Court: Sustained.

Q. ... In fact, when you pled guilty in October 3d of 1979, it was to Acting with Another, in fact, it was with Michael Isom, was it not?

Defense counsel objected to the last question, and, then, out of the hearing of the jury, he moved for a mistrial, contending that the prosecutor had prejudiced defendant by delving into irrelevant facts from an unrelated case. The trial court sustained the objection but overruled the motion for mistrial. Defense counsel did not ask that the jury be admonished to disregard the question, adding, "I would prefer not to emphasize it ...". Defendant now contends the trial court abused its discretion by denying the mistrial "when the state inquired into facts of defendant's prior convictions which were irrelevant, immaterial, prejudicial and which were not related to the case on trial." We disagree.

Defendant chose to testify. His credibility may be attacked by proof of his guilty plea and prior convictions. § 491.050 RSMo 1986. The prosecutor may elicit the general nature, the date and the place of each crime, as well as the resulting sentences. *State v. Sullivan*, 553 S.W.2d 510, 515 (Mo.App.1977). However, the prosecutor may not unduly emphasize a conviction, show details so as to aggravate the conviction, or use it to suggest guilt of the offense presently charged. *State v. Williamson*, 584 S.W.2d 628, 630 (Mo.App. 1979). Improper use of prior convictions can rise to the level of reversible error. *State v. Henderson*, 669 S.W.2d 573, 575 (Mo.App.1984).

Defendant contends the questions asked of him in this case are similar to those held to require reversal of convictions in *State v. Sanders*, 634 S.W.2d 525 (Mo.App.1982) and *State v. Henderson, supra.* In *Sanders*, a rape case, the defendant admitted prior guilty pleas for rape and kidnapping during direct examination. On cross-examination, the prosecutor read verbatim the charges to which the defendant previously had pled guilty. Implicit in this, this Court reasoned, were many questions, some of

them improper to impeach credibility. *Id.* at 527. The prosecutor's technique, the Court said, emphasized the prior convictions, made them more graphic by using the victim's name and age, showed a tendency to commit rape, and implied guilt of the present charge. This, the court held, was prejudicial error. *Id.* at 528.

In *Henderson, supra,* the defendant, on trial for robbery, first degree and assault, first degree, admitted on direct examination a prior conviction for attempted robbery, second degree. On cross-examination, the prosecutor asked whether that crime had involved a sawed-off shotgun, although use of a weapon was not even an element of the prior crime. The court said the questions went beyond the nature of the prior offense to explore improperly the details of that crime. *Id.* at 576.

The questions in issue here are pale in comparison. The prosecutor here simply elicited information about the nature of the prior crimes and was not permitted to dwell on them, explore details or use the prior convictions to suggest guilt. Moreover, although we do not question the court's ruling sustaining defendant's objection, the prosecutor's questions certainly cannot be said to have been made in bad faith when these questions are considered in context. One part of the defense was that defendant was not responsible for any of the crimes charged; either Isom or Jones was responsible. Thus, during cross-examination, defendant said the idea to steal the cigarettes was Isom's, first expressed by Isom only after the two of them were in the store. Defendant also denied any physical contact with Dennis O'Neal and denied any desire to escape in the car driven by Jones. The injuries to the Yansens, defendant said, were entirely Jones' fault and, thus, his responsibility. In this context, the prosecutor's question regarding defendant's guilty plea for an offense committed with Isom, arguably, did go to his credibility.

Moreover, defense counsel expressly rejected the trial court's offer to admonish the jury to disregard the question. We understand counsel's desire, as a matter of trial tactics, not to emphasize the question before the jury. However, we will not allow defense counsel, by deciding not to seek a lesser remedy, to elevate an allegedly improper question into an error so prejudicial that mistrial is required as a matter of law. See *State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984).

Defendant also contends two other questions by the prosecutor—one asked of defendant, the other of Isom—were improper and "further prejudiced defendant and denied him a fair trial." The "cumulative effect" of all these questions, defendant argues, "was so prejudicial that defendant's motion for a mistrial should have been granted."

This contention is not properly before us. It was not raised in defendant's Point Relied On, which referred only to the questions discussed above. *State v. Mooney,* 714 S.W.2d 216, 218 (Mo.App.1986). Moreover, defendant does not develop an argument or cite authority to support his "cumulative effect" contention. We need not address it. See *State v. Stokes,* 739 S.W.2d 560, 561 (Mo.App.1987).

■ In his final point, defendant contends that, even if he is guilty of robbery second degree, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars a conviction for any of the assaults. Any assaults committed during the attempt to escape, defendant contends, were part of "a continuing course of conduct [that] was being engaged in. . . ." Thus, defendant contends, his convictions were improper and should be vacated.

Defendant has not properly preserved this allegation of error for appellate review because it is not included in his motion for a new trial. *State v. Childs,* 684 S.W.2d 508, 509 (Mo.App.1984). We review only for plain error and find no "manifest injustice or miscarriage of justice." Rule 30.20.

Defendant cites no authority to support his argument that "double jeopardy" forbids conviction of offenses committed while escaping. Arguably, escape may be characterized as part of one continuous transaction. In Missouri, however, the Double Jeopardy Clause does not prevent cumulative punishments for acts committed in a single transaction. *State v. Cooper,* 712 S.W.2d 27, 31 (Mo.App.1986). In determin-

ing double jeopardy in Missouri, we follow the "separate or several offense rule" rather than the "same transaction rule". *State v. Jackson,* 703 S.W.2d 30, 33 (Mo.App. 1985). The former rule allows a defendant to be convicted of several offenses which arise from the same transaction. *Id.* The essential question is whether in law and fact defendant has committed two separate offenses. *Id.*

Offenses are separate and distinct when "each offense necessitates proof of an essential fact or element not required by the other." *Childs, supra* at 511. The evidence shows defendant did commit three separate offenses. Acting with others, defendant forcibly stole cigarettes from Schnucks, using force to exit the store. After these elements of robbery had been established, separate offenses were committed during the escape attempt that followed. The offenses of assault, second and third degree required proof of force directed against Dennis O'Neal and the Yansens, which was not required to support the robbery conviction. Thus, conviction of all crimes charged did not constitute double jeopardy.

Judgment affirmed.

SMITH, P.J., and STEPHAN, J., concur.