**STATE of Missouri, Plaintiff–Respondent,**

v.

**Floyd MACLIN, Jr., Defendant–Appellant.**

**No. 25214.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 28, 2003.

Craig Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Floyd Maclin, Jr. ("Appellant") appeals from his conviction, following a bench trial, of the class B felony of robbery in the second degree, a violation of Section 569.030.[1] Appellant was sentenced, as a prior and persistent offender, to fifteen years imprisonment, which sentence was

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

later amended by the trial court to twelve years imprisonment. Appellant, in one point, challenges the sufficiency of the evidence supporting his conviction. We affirm.

Viewed in the light most favorable to the judgment, the evidence revealed the following: at approximately 7:30 P.M. on February 4, 2001, Appellant entered the Albertson's grocery store located at 218 South Glenstone in Springfield, Missouri. His entrance was observed by Matthew Young ("Young"), a store employee, who recognized Appellant and informed the store's "front-end manager," Jason Lindsay ("Lindsay"), that he should "keep an eye on" Appellant.

Lindsay positioned himself in the store's office, which was located on an elevated platform at the front of the store and overlooked the liquor department. The office was equipped with a one-way window, through which Lindsay saw Appellant walk behind the counter in the liquor department and take "at least three bottles" of Crown Royal whiskey from the shelf. Appellant then walked down an aisle in the liquor department and, when he turned the corner, Lindsay noted that he was no longer carrying the bottles of Crown Royal.

Lindsay summoned Daryn Davis, the store manager, and informed him of what he had observed. Young took Lindsay's place in the office, while Lindsay and Davis twice checked the aisle down which Appellant had walked to confirm that he had not left the bottles on the shelf in that aisle. Finding that he had not, Lindsay told Young of his suspicion that Appellant was attempting to steal the Crown Royal, and Young positioned himself at the store's front entrance, along with Chad Lawson ("Lawson"), another store employee.

As Appellant approached the entrance to the store, Lawson asked him to wait for a moment. Lindsay and Davis arrived shortly thereafter and Lindsay asked Appellant if there was anything he wished to pay for before leaving the store. Appellant said he had just been checking prices and that there was nothing he wished to purchase. Davis then asked Appellant to accompany him to the store office, and placed his hand on Appellant's back.

At that point, Appellant "went completely nuts," charging into Davis and flailing his arms. When Davis called out for help, Lindsay grabbed Appellant's arms in an unsuccessful attempt to prevent him from hitting Davis. Freeing one of his arms, Appellant shoved Davis out of the store. When Appellant tried to follow Davis out of the store, Young and Lawson grabbed him, and were dragged into the parking lot. At some point thereafter, as the employees tried to restrain him, Appellant struck Lawson on his forehead with one of the bottles of Crown Royal and bit Lindsay's hand hard enough to leave a scar. Davis sustained an injury to his foot or ankle that later necessitated a trip by ambulance to a hospital.

Eventually, Lawson ran back into the store to retrieve a pair of handcuffs. When he returned, he, Young, and Lindsay pinned Appellant to the ground and managed to place one of Appellant's hands in the handcuffs before the police arrived. Although Appellant requested during the melee that the employees let him go, and promised that he would not "do it again," at no time did he cease resisting the employees' attempts to restrain him or seek to return the bottles of Crown Royal. When the police arrived, Appellant was still resisting and was "frantic for [the employees] to get off of him." As the responding officer was handcuffing Appellant, he noticed that Appellant was lying on a bottle of Crown Royal.

Appellant was arrested and transported to the city jail, where he made a Miran-

dized statement to the police in which he admitted stealing the liquor "[t]o sell [it] so he could buy diapers for his baby." He told investigators that "a smaller employee tried to stop him which [sic] he felt he could over power pretty easily," and that he was "just trying to leave."

At trial, Appellant testified that he went to Albertson's to steal liquor and admitted to taking four bottles of Crown Royal. He acknowledged that no employee touched him until he attempted to leave. He claimed that, with the exception of biting Lindsay's finger, he never resisted the employees' attempts to restrain him. At the close of evidence, the trial court found Appellant guilty and he was later sentenced as indicated above. This appeal follows.[2]

In his sole point, Appellant claims the trial court erred in failing to grant his motion for judgment of acquittal, as the evidence was insufficient to support a finding of guilt of robbery in the second degree. He alleges that the State failed to prove beyond a reasonable doubt that Appellant used force or the threat thereof for the purpose of "preventing or overcoming resistance to the taking of . . . property or to the retention thereof immediately after the taking," as required by statute. He claims the evidence was sufficient to show only that he "used force to defend himself when four employees jumped [on] him as he tried to leave the premises."

In considering a challenge to the sufficiency of the evidence to support a conviction, we accept as true all evidence favorable to the State, disregarding all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). We do not act as a " 'super juror' with veto powers"; rather, we give great deference to the trier of fact.

*Id* at 414; *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). We determine only whether sufficient evidence was presented to allow a reasonable finder of fact to find that the State proved each element of an offense beyond a reasonable doubt. *Grim* at 405; *State v. Daniels*, 18 S.W.3d 66, 68 (Mo.App. W.D.2000).

Section 569.030 defines the offense of robbery in the second degree as "forcibly steal[ing] property." "Stealing" is defined in Section 570.030 as "appropriat[ing] property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Section 569.010(1) states, in pertinent part, that a person " 'forcibly steals,' and thereby commits robbery, when, in the course of stealing . . . he uses or threatens the immediate use of physical force upon another person for the purpose of (a) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking."

Whether Appellant attempted to steal the bottles of Crown Royal is not disputed here; Appellant admitted as much at trial and does so again in his brief here. What is disputed is the nature of Appellant's resistance to the Albertson's employees' attempts to prevent him from stealing the liquor. In a factually similar case, the eastern district of this court considered and rejected a defendant's claim that the State had not proved he used force to thwart attempts to prevent his retention of another's property when it was established that he attempted to leave a grocery store, along with a friend and several cartons of cigarettes, and "pushed aside" a store manager who was blocking the door to prevent the defendant's escape. *State v. Applewhite*, 771 S.W.2d 865, 867 (Mo.App. E.D.1989). The manager grabbed the defendant and his friend, but was "knocked

**2.** Appellant was granted leave by this court to file his notice of appeal out of time.

up against the [door]" by the defendant as he left the store. *Id.* The defendant claimed at trial that his resistance "was 'more akin to a bump'" and similar to an "accident[ ]" rather than an intentional use of force. *Id.* at 868. The trial court in *Applewhite* rejected the defendant's version of events and the appellate court found that judgment to be supported by the evidence. *Id.*

Similarly, we agree with the trial court in holding that the evidence supported a finding that the State "met its burden quite easily" in proving beyond a reasonable doubt that Appellant's struggle with the employees was for the purpose of "preventing or overcoming resistance to the taking of the property of" Albertson's. Section 569.010(1)(a). The trial court found that it "strain[ed] believability too far to think that this struggle happened for any other reason than [Appellant] attempting to leave with the items. The possibility of standing still or just turning back around and going inside the store come[s] to mind in explaining anything else." The trial court rejected Appellant's explanation of why he responded with force to attempts to restrain him, which it was free to do. "Witness credibility is a matter for the trial court, and it is not within the province of the appellate court in a court-tried criminal case." *State v. Bewley*, 68 S.W.3d 613, 618 (Mo.App. S.D.2002) (quoting *Daniels* at 68). The record is replete with evidence sufficient to support the trial court's finding of guilt and Appellant's point is consequently denied.

The judgment of the trial court is affirmed.

BARNEY, P.J., and PREWITT, J., concur.