

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99427 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | Honorable Jon A. Cunningham |
| CLAUDE DALE BROOKS, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: February 18, 2014 |

## INTRODUCTION

Defendant Claude D. Brooks was convicted in a court-tried case in the Circuit Court of St. Charles County of robbery in the second degree, section 569.030, R.S.Mo. (2000). On appeal, Brooks argues that the trial court erred by overruling his motion for judgment of acquittal at the close of evidence and imposing judgment and sentence against him for robbery in the second degree, because the State did not prove that he used or threatened to immediately use physical force against the bank teller, as required by section 569.010, R.S.Mo. (2000).

We vacate Brooks's conviction for robbery in the second degree and enter a conviction for stealing, section 570.030, pursuant to *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993). We remand this matter to the trial court for re-sentencing consistent with this opinion. *See State v. Whalen*, 49 S.W.3d 181, 189 (Mo. banc 2001).

## STANDARD OF REVIEW

Appellate review in a court-tried criminal case is the same as in a jury-tried criminal case. Mo. Sup. Ct. R. 27.01(b); *State v. Cooper*, 108 S.W.3d 101, 103 (Mo. App. E.D. 2003). "In reviewing the sufficiency of the evidence, the appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). However, this "Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable, speculative, or forced inferences.'" *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n.1 (Mo. App. E.D. 1999)).

## FACTS

On August 25, 2011, Brooks entered a Regions Bank in St. Charles County wearing bulky clothing, a long-haired wig, baseball cap, and sunglasses. He approached teller A.E. and handed her a note which read: "Fifties, hundreds, no bait money, and bottom drawer." When A.E. began to walk away from her station to retrieve the money, Brooks slammed his hand down hard on the counter, telling her to "get back here." After explaining to Brooks that the money was elsewhere, A.E. retrieved the money and placed it on the counter in front of Brooks. He then put the money into a bag and left the bank. Soon thereafter, police arrested Brooks on a nearby street. Officers found the stolen money in a bag on Brooks's person, and the wig and cap in a storm drain not far away.

The State charged Brooks with robbery in the second degree. At his bench trial, Brooks admitted he stole money from the bank, but argued that he did not commit robbery in the second degree by using or threatening to immediately use physical force. At the close of evidence, Brooks moved for judgment of acquittal, arguing there was insufficient evidence to convict him of second-degree robbery, because he did not use or threaten the use of physical force. The trial court denied the motion, stating Brooks's unusual knowledge of bank procedure and gesture of slamming his hand down on the bank counter "show[ed] an actual, immediate threat of physical force." The trial court found Brooks guilty of robbery in the second degree and sentenced him to 25 years' imprisonment. This appeal follows.

## DISCUSSION

In his sole point, Brooks argues the trial court erred by overruling his motion for judgment of acquittal at the close of evidence, because there was insufficient evidence to prove that he used or threatened to immediately use physical force in the act of stealing as required by section 569.010. The State claims there was sufficient evidence in the trial record to prove that Brooks threatened the immediate use of physical force.

Section 569.030 provides in pertinent part that "[a] person commits the crime of robbery in the second degree when he forcibly steals property." The term "forcibly steals" is defined under section 569.010(1), in pertinent part, as follows: "[A] person 'forcibly steals' . . . when, in the course of stealing . . . *he uses or threatens the immediate use of physical force upon another person*" either to defeat resistance to the theft or to compel the surrender of the property." (emphasis added).

3

As authority for his argument that the evidence in the record does not support a conviction of second-degree robbery, Brooks directs this Court to *Patterson v. State*, 110 S.W.3d 896 (Mo. App. W.D. 2003), for a discussion of the meaning of the term "forcibly steals." There, the Western District granted the defendant's motion for post-conviction relief and reversed his conviction for forcible stealing, because the defendant's attorney was ineffective in submitting to the jury an improperly worded lesser offense instruction for stealing. *Id.* at 900-01. The court noted the lesser offense of "stealing is transformed into the greater offense of second degree robbery when the stealing is accomplished 'forcibly.'" *Id* at 901 (quoting *State v. Ide*, 933 S.W.2d 849, 853 (Mo. App. W.D. 1996)). The court then summarized the type of factual scenarios in which Missouri courts have found that the defendant threatened the immediate use of physical force:

> [t]he requisite threat of physical force may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used of phrases like, "This is a holdup," or that it is a "stickup." Furthermore, it does not matter whether the defendant is capable of inflicting the physical harm threatened upon the victim. For example, it is enough that the robber flourishes a harmless imitation pistol or falsely pretends to be pointing a pistol supposedly concealed in his pocket.[1]

*Id.* at 904-905 (internal citations omitted). Brooks argues that none of these scenarios is present in the instant case.

Brooks also cites *State v. Tivis*, 884 S.W.2d 28, 30 (Mo. App. W.D. 1994), and *State v Carter*, 967 S.W.2d 308 (Mo App. E.D. 1998) in support of his argument. In *Tivis*, 884 S.W.2d at 30, the Western District found that the defendant did not forcibly steal by yanking a purse from the victim's shoulder, because the defendant did not make

---

[1] Contrary to the dissent's contention, the court in *Patterson* does not suggest—nor do we suggest infra—that this list is exclusive or exhaustive of all fact scenarios in which courts could reasonably find that the defendant made an implied threat of immediate physical force.

4

explicit threats or physically struggle with the victim. The State argued the fact that the defendant put the victim in fear was sufficient evidence to prove that the defendant committed robbery. *Id.* The Court rejected this argument, noting that the statute "requires the use or threatened use of physical force," and evidence of the defendant's purse snatching alone did not meet that standard. *Id.*

Similarly, in *Carter*, 967 S.W.2d at 309, this Court reversed and remanded the defendant's conviction for second degree robbery where the defendant demanded that the victim give him her purse and then reached into her pocket to take it. *Carter* held that there was insufficient evidence to find that the defendant used or threatened the immediate use of physical force, because the "evidence presented at trial showed that Defendant never threatened or hit Victim and Defendant did not display a weapon." *Id.*

In response to Brooks's argument that there is insufficient evidence to support a finding that he threatened the immediate use of physical force, the State cites *State v. Rounds*, 796 S.W.2d 84, 86 (Mo. App. E.D. 1990), and *State v. Duggar*, 710 S.W.2d 921, 922 (Mo. App. S.D. 1986). In *Rounds*, 796 S.W.2d at 86, this Court held there was sufficient evidence to convict the defendant of using or threatening the immediate use of physical force, because the "defendant had his hand in his pocket, implying he was armed with a weapon . . . . warned victim 'not to be a hero . . . or [defendant] was going to blow [victim's] head off'' . . . . [and v]ictim felt 'pretty nervous.'" (third and fourth alterations in original). In *Duggar*, 710 S.W.2d at 922, the Southern District held that there was sufficient evidence of threatening physical force, because the defendant "had a firm purpose, an unusual knowledge of the internal security system in the cash register, and a hand concealed in his jacket," giving the appearance that he had a gun.

In addition, the State argues that Brooks's conduct raised the inference of a threat of immediate harm because he put the victim in fear. The State cites to *State v. Jolly*, 820 S.W.2d 734, 736 (Mo. App. E.D. 1991), *State v. Lybarger*, 165 S.W.3d 180, 186-87 (Mo. App. W.D. 2005), and *State v. Applewhite*, 771 S.W.2d 865, 868 (Mo. App., E.D. 1989), in support of this proposition. In *Jolly*, 820 S.W.2d at 736, this Court found that no substantial evidence existed to support a jury instruction for stealing rather than second-degree robbery, because the evidence showed that the defendant struggled with the victim, causing the victim's fingernail to be ripped off. In *Lybarger*, 165 S.W.3d at 186-87, the Western District held that there was sufficient evidence to support a conviction for second-degree robbery, because the defendant told the victim, "This is a holdup," and kept his hand in his pocket as if he had a gun. In *Applewhite*, 771 S.W.2d at 868, this Court held that there was sufficient force to support the charge of second-degree robbery, where the defendant pushed a store manager, knocking him up against the exit as he fled.

We believe that each of the cases cited by the State is factually distinguishable from the instant case. In *Duggar*, 710 S.W.2d at 922, the defendant had his hand in his pocket while demanding money, presumably suggesting the presence of a weapon. In *Rounds*, 796 S.W.2d at 86, the "defendant had his hand in his pocket, implying he was armed with a weapon . . . . [and threatened] to blow [victim's] head off.'" (third alteration in original). Similarly, in *Lybarger*, 165 S.W.3d at 186-87, the defendant held his hand in his pocket as if he had a gun, and explicitly told the victim, "This is a holdup." Here, we have no evidence of a hand in a pocket or explicit threats of physical force. Finally, in *Jolly*, 820 S.W.2d at 736, the defendant physically struggled with the victim, and in

*Applewhite*, 771 S.W.2d at 868, the defendant knocked the victim aside as he fled. Here, in contrast, Brooks did not touch or struggle with the victim.

We believe that the Western District in *Patterson* best summarized the circumstances in which we may find an implicit threat of force. Though not an exhaustive list, *Patterson*, 110 S.W.3d at 904, explained that a threat of force "may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used [a] phrase[] like, 'This is a holdup.'"

With these guidelines in mind, we now move to the facts of the instant case. Here, the record shows that Brooks spoke to A.E. in a low tone throughout the encounter, never raised his voice, and did not verbally threaten A.E. with physical force. She testified that Brooks never tried to touch or strike her, never indicated or implied that he had a weapon by actions such as putting a hand in his pocket, grabbing his waistband, or reaching inside his clothing, and that Brooks kept his hands on the counter throughout the incident.

Based on this evidence, a trier of fact could not reasonably have found that Brooks "use[d] or threaten[ed] the immediate use of physical force upon another person," as required by the statute for robbery in the second-degree, section 569.030. None of the circumstances described in *Patterson* are present in the instant case. There is no evidence that Brooks: displayed a weapon, gave the appearance that he possessed a weapon, or used a phrase like "this is a holdup." Moreover, our search of Missouri jurisprudence reveals no case in which a defendant was convicted of second degree robbery because of a disguise, a hand slap on a counter, or the fact that the incident occurred during business hours at a bank.[2] Instead, we believe that there must be some affirmative conduct on the

_____

[2] The dissent suggests that we should follow the reasoning of *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002), and hold that "a demand for money in th[e] context [of a bank robbery] is an

7

part of the Brooks, *beyond the mere act of stealing,* which communicates that the he will "*immediately*" employ "*physical force*" if the victim "resist[s] . . . the taking of the property." § 569.010 (emphasis added). Accordingly, we vacate Brooks's conviction for robbery in the second degree, section 569.030, because a trier of fact could not have reasonably found that Brooks "forcibly" stole money from the bank within the meaning of section 569.010.

As a final matter, the State asks that we enter a conviction for stealing, section 570.030, in the event that we overturn Brooks's conviction. Pursuant to *O'Brien*, 857 S.W.2d at 220:

> [w]here a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

*Id.* Here, in order for the trial court to have found that Brooks committed the crime of robbery in the second degree, the court must necessarily have found that Brooks also committed the crime of stealing.[3] Thus, the undisputed evidence was sufficient for a fact-

---

implicit threat of harm in and of itself." But *Gilmore*'s reasoning is inapposite. *Gilmore* dealt with application of the federal "Bank Robbery and Incidental Crimes" statute, 18 U.S.C. § 2113 (2013), which specifically criminalizes stealing from a *bank* by means of *intimidation*. *Id.* § 2113(a). To determine if the defendant used "intimidation," federal courts ask "whether an ordinary person in the [bank] teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *Gilmore*, 282 F.3d at 402. On the other hand, Missouri, which has no specialized bank robbery statute, requires us to determine whether an implied threat of immediate physical force exists based on the *defendant's* actions, *see* section 569.010, rather than the reaction of a putative victim, such as the teller in the instant case.

[3] As noted supra, "[a] person commits the crime of robbery in the second degree when he forcibly steals property." § 569.030. "[A] person 'forcibly steals,' and thereby commits robbery, when in the course of stealing, as defined in section 570.030, he uses or threatens the immediate use of physical force upon another person . . . ." § 569.010. Thus, the elements of stealing are by definition a part of the crime of robbery.

Furthermore, the undisputed facts show that Brooks entered a bank, demanded money that was not his own, received that money, and fled. In fact, Brooks counsel conceded in closing arguments that there were very few issues in this case, not whether it was Mr. Brooks, not whether there was money taken, not how much money was taken, was there a crime, etc. The only issue was [whether] this in fact [was] a robbery second degree . . . due to forcible theft rather than a stealing.

8

finder to find that Brooks committed the crime of stealing by "appropriat[ing] property . . . of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Accordingly, we enter a conviction for the lesser offense of stealing, section 570.030.

## CONCLUSION

For the foregoing reasons, we vacate Brooks's conviction for robbery in the second degree, section 569.030, and enter a conviction for the lesser offense of stealing, section 570.030, pursuant to *O'Brien*, 857 S.W.2d at 220. We remand this matter to the trial court for re-sentencing consistent with this opinion. *See Whalen*, 49 S.W.3d at 189.

_____
Lisa S. Van Amburg, Presiding Judge

Patricia L. Cohen, Judge, concurs
Gary M. Gaertner, Jr., Judge, dissents in separate opinion.



# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

STATE OF MISSOURI,               )        No. ED99427

                                  )

      Plaintiff/Respondent,     )        Appeal from the Circuit Court of
                                  )        St. Charles County

vs.                          )

                                  )        Honorable Jon A. Cunningham

CLAUDE DALE BROOKS,       )

                                  )

      Defendant/Appellant.      )        Filed:  February 18, 2014

### DISSENT

I respectfully dissent.  Because I believe the element of force is present when viewing the evidence in the light most favorable to the verdict, I would affirm.

Specifically at issue is whether there was sufficient evidence that Brooks "use[d] or threaten[ed] the immediate use of physical force" upon the teller, as required by the definition of forcible stealing in Section 569.010(1), RSMo. (2000).  The statute goes on to provide that such force or threat of force will qualify as forcible stealing when it is used to: "prevent[] or overcom[e] resistance to the taking of the property . . . or [to] compel[] the [victim] to deliver up the property."  Section 569.010(1)(a)-(b).  Regarding a threat of force, the requisite threat may be actual or implied.  E.g., Patterson v. State, 110 S.W.3d 896, 904 (Mo. App. W.D. 2003).

It is apparent from the record that Brooks did not actually use physical force upon the victim teller at any point. Similarly, it is clear that he made no actual threat of immediate physical harm. Thus, the issue is whether there was sufficient evidence in the record from which a reasonable trier of fact could have found that Brooks implicitly threatened the immediate use of physical force upon the teller to defeat resistance to the theft or compel the surrender of the money.[1] See State v. Vandevere, 175 S.W.3d 107, 108 (Mo. banc 2005) (standard of review for sufficiency of evidence). I would conclude that there is.

An implicit threat of immediate physical force may be communicated by the defendant's words, behavior, or both. E.g., Patterson, 110 S.W.3d at 904. The majority recites the Western District's summary of prior factual scenarios resulting in findings of implicit threats: where "the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used [] phrases like, 'This is a holdup,' or that it is a 'stickup.'" Id. The majority also summarizes the standard of proof thus: "[W]e believe that there must be some affirmative conduct on the part of [the defendant], *beyond the mere act of stealing*, which communicates that he will '*immediately*' employ '*physical force*' . . . ." Maj. op. at 8.

While I agree with the statement that an affirmative act beyond stealing is required under the statute, I disagree with the majority's application of the standard with

---

[1] The majority discusses several cases, both to distinguish and lend support to their conclusion, where in each the defendant made no threats and the factual issue was whether the defendant used physical force. As such, I believe analysis of these is irrelevant to the present case. See State v. Carter, 967 S.W.2d 308 (Mo. App. E.D. 1998) (defendant demanded victim's purse, victim told defendant to get it from her pocket, defendant did so, and victim did not struggle; court found no use of force); State v. Tivis, 884 S.W.2d 28 (Mo. App. W.D. 1994) (defendant yanked purse from victim's shoulder; victim did not struggle and yank did not amount to physical force); State v. Jolly, 820 S.W.2d 734 (Mo. App. E.D. 1991) (finding use of force in overcoming resistance where in struggle for property, victim's fingernail was ripped off); State v. Applewhite, 771 S.W.2d 865 (Mo. App. E.D. 1989) (finding sufficient use of physical force when defendant "pushed aside" store manager as he fled).

2

respect to implicit threats of immediate physical force, because it seems to narrow the spectrum of actions that can constitute an implicit threat to those listed in Patterson. Applying Patterson, the majority emphasizes what Brooks did not do: he never raised his voice from its low tone,[2] he never indicated in any way by his actions that he had a weapon, and he did not use a phrase like "this is a holdup."[3] Maj. op. at 7. The majority concludes that in absence of these things, and because no other Missouri case has found actions similar to Brooks' to constitute second-degree robbery, we cannot so find here. The majority also by implication ignores Brooks' disguise, slam on the counter, and demand for money in the bank context, by noting these actions but then insisting that "some affirmative conduct . . . *beyond the mere act of stealing*" must be present.

I disagree. While I believe the acts listed in Patterson, saying "this is a holdup" or indicating possession of a weapon, will support a finding of robbery, I do not believe either must be present in order for Brooks' acts to constitute robbery. Further, there is also no Missouri case finding that actions similar to Brooks' here were not robbery. Our standard of review requires us to view the facts in the light most favorable to the verdict and determine whether those facts establish the elements of the crime. State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005). In doing so, focusing on what Brooks did do, I would find that Brooks' affirmative conduct beyond the mere taking of money communicated an implicit threat of immediate physical harm to the teller under Section 569.010(1).

---

[2] I would argue this specific fact does not mitigate against a finding of robbery under the circumstances: due to the presence of security personnel and other witnesses, anyone robbing a bank would likely try to keep his or her tone of voice low so as not to alert others to the crime.

[3] The majority also points to the facts that Brooks never verbally threatened the teller with physical force, touched her, or struck her; concluding as a whole that a trier of fact could not reasonably have found Brooks used or threatened the immediate use of physical force. Maj. op. at 7. As these facts are not necessary for a finding that Brooks implicitly threatened immediate use of physical force, I do not discuss them in my analysis.

3

Brooks came into a bank wearing a wig, a hat, and sunglasses, the latter two in violation of the bank's policy prohibiting hats and sunglasses in the bank lobby. He gave a note to the teller demanding money: "Fifties, hundreds, no bait money, and bottom drawer." When the teller walked away to retrieve the money from her station at the drive-through window, he slammed his hand hard on the counter and asked where she was going, telling her he wanted the money from the drawer in front of her. He watched her movements the entire time she went to retrieve money.

A reasonable interpretation of Brooks' actions is that they constituted a threat of immediate physical force should the teller not comply with his demand. A bank is an environment that is regularly a target of robberies, in which therefore exists a heightened awareness of security threats, such that a demand for money in that context is an implicit threat of harm in and of itself. See United States v. Gilmore, 282 F.3d 398, 402 (6th Cir. 2002) (stating written or verbal demands for money in a bank "carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result").[4]

Brooks' disguise and note indicated his clear purpose to steal money, and unlike the majority, I do not find Brooks' note to be so different that one reading, "this is a holdup." Cf. State v. Clark, 790 S.W.2d 495, 497 (Mo. App. E.D. 1990) (note saying "this is a holdup" implied forcible detention, intent to commit robbery, and necessary force to carry out that purpose). He exhibited an unusual familiarity with the bank's security procedures, specifically instructing the teller not to include bait money.[5] See

---

[4] While the federal robbery statute differs from Missouri's, I note here simply that at least one other court has acknowledged that a demand for money in a bank is an inherently threatening action.

[5] There was testimony that bait money was kept in the top drawer, and removal of bait money from the drawer would alert security.

4

State v. Duggar, 710 S.W.2d 921, 922 (Mo. App. S.D. 1986) (noting defendant's unusual knowledge of security system, as well as defendant's firm purpose and concealed hand in jacket, in finding defendant made implicit threat).

Finally, Brooks' slamming his hand forcefully on the counter could also reasonably be seen as a threat of physical force to the teller should she refuse to comply.[6] This coupled with his specific demands regarding money implies a consequence should she have ignored him. Naturally, the teller felt "terrified" and that she "had to follow through with the note to keep [her] co-workers and [her]self safe." See State v. Lybarger, 165 S.W.3d 180, 186-87 (Mo. App. W.D. 2005) (discussing Duggar, 710 S.W.2d at 922; noting facts in Duggar including that victim testified he "felt threatened" by defendant's actions led to conclusion that defendant implicitly threatened use of immediate physical force).

I would conclude under the circumstances that the record contains ample evidence from which a trier of fact could reasonably conclude that Brooks' actions constituted a threat of immediate physical force for the purpose of "preventing . . . resistance to the taking of the property." Section 569.010(1)(a). I would therefore affirm Brooks' conviction.

For the foregoing reasons, I respectfully dissent.

Gary M. Gaertner, Jr., Judge

---

[6] The majority's passing characterization of this action as "a hand slap on a counter," Maj. op. at 8, does not in my opinion accurately reflect the record or represent a view of this action in the light most favorable to the verdict as required by our standard of review.

5