

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | SC94154 |
| | ) | |
| CLAUDE DALE BROOKS, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
The Honorable Jon A. Cunningham, Judge

*Opinion issued November 12, 2014*

Claude Dale Brooks was found guilty in a court-tried case in the St. Charles County Circuit Court of robbery in the second degree, § 569.030.[1]  On appeal, Brooks argues that the circuit court erred by overruling his motion for judgment of acquittal at the close of evidence and entering judgment against him for robbery in the second degree because the State did not present sufficient evidence that he used or threatened to immediately use physical force against the bank teller.  Affirmed.

**Standard of Review**

"In reviewing the sufficiency of the evidence in a court-tried criminal case the appellate court's role is limited to a determination of whether the [S]tate presented sufficient evidence from which a trier of fact could have reasonably found the defendant

---

[1] All statutory citations are to RSMo 2000.

guilty." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005).  "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict."  *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

## Facts

On August 25, 2011, Brooks entered a bank in St. Charles County wearing bulky clothing, a long-haired wig, a baseball cap, and sunglasses.  He approached teller A.E. and handed her a note that read: "50 & 100's, No Bait Bills, Bottom Drawer." When A.E. began to walk away from her station to retrieve the money, Brooks slammed his hand down hard on the counter, telling her to "get back here."  After explaining to Brooks that the money was elsewhere, A.E. retrieved the money and placed it on the counter in front of Brooks.  He then put the money into a bag and left the bank.  Soon thereafter, police arrested Brooks on a nearby street.  Officers found the stolen money in a bag on Brooks's person and the wig and cap in a storm drain not far away.

The State charged Brooks with robbery in the second degree.  Brooks did not contest the fact that he stole money from the bank but argued that he did not commit robbery in the second degree by using or threatening to immediately use physical force. At the close of the State's evidence, Brooks moved for judgment of acquittal, arguing there was insufficient evidence of second-degree robbery because he did not use or threaten the use of physical force.  The circuit court overruled the motion, and after finding Brooks guilty of robbery in the second degree, stated that his disguise, the note

he handed to the teller, his unusual knowledge of bank procedure, and the gesture of slamming his hand down on the bank counter "show[ed] . . . an actual, immediate threat of physical force." The circuit court found Brooks to be a prior and persistent offender based on his two prior federal bank robbery convictions and sentenced him to 25 years' imprisonment.

**Analysis**

Brooks continues to argue the circuit court erred by overruling his motion for judgment of acquittal at the close of evidence because there was insufficient evidence to prove that he used or threatened to immediately use physical force in the act of stealing as required by §§ 569.030 and 569.010(1). The State claims that a review of the evidence presented at trial and the reasonable inferences from the evidence shows that there was sufficient proof that Brooks threatened the immediate use of physical force.

Section 569.030 provides in pertinent part that "[a] person commits the crime of robbery in the second degree when he forcibly steals property." The term "forcibly steals" is defined by section 569.010(1), in pertinent part, as follows: "[A] person 'forcibly steals' . . . when, in the course of stealing . . . he uses or threatens the immediate use of physical force upon another person for the purpose of" either defeating resistance to the theft or compelling the surrender of the property.

Brooks relies on *Patterson v. State*, 110 S.W.3d 896 (Mo. App. 2003), to support his argument that the record does not support a conviction of second-degree robbery. In *Patterson*, the court of appeals reversed the denial of post-conviction relief and vacated a conviction for forcible stealing because the defendant's attorney was ineffective in

3

submitting to the jury an improperly worded lesser offense instruction for stealing. *Id.* at 900-01, 907. The court noted the lesser offense of "stealing is transformed into the greater offense of second degree robbery when the stealing is accomplished 'forcibly.'" *Id.* at 901. The court then summarized the type of factual scenarios in which Missouri courts have found that the defendant threatened the immediate use of physical force:

> The requisite threat of physical force may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used of [sic] phrases like, "This is a holdup," or that it is a "stickup." Furthermore, it does not matter whether the defendant is capable of inflicting the physical harm threatened upon the victim. For example, it is enough that "the robber flourishes a harmless imitation pistol or falsely pretends to be pointing a pistol supposedly concealed in his pocket."

*Id.* at 904-05 (internal citations omitted). Brooks argues that none of these scenarios is present in the instant case.

Brooks also cites *State v. Tivis*, 884 S.W.2d 28, 30 (Mo. App. 1994), and *State v. Carter*, 967 S.W.2d 308-09 (Mo. App. 1998), in support of his argument. In *Tivis*, the court of appeals held that the defendant did not forcibly steal by yanking a purse from the victim's shoulder because the defendant did not make explicit threats or physically struggle with the victim. 884 S.W.2d at 30. The State in *Tivis* argued the fact that the defendant put the victim in fear was sufficient evidence to prove that the defendant committed robbery. *Id.* The court of appeals rejected that argument, noting that the statute "requires the use or threatened use of immediate physical

4

force," and evidence of the defendant's purse snatching alone did not meet that standard. *Id.*

In response to Brooks's argument that there is insufficient evidence to support a finding that he threatened the immediate use of physical force, the State cites *State v. Rounds*, 796 S.W.2d 84, 86 (Mo. App. 1990), and *State v. Duggar*, 710 S.W.2d 921, 922 (Mo. App. 1986). In *Rounds*, the court of appeals held there was sufficient evidence to convict the defendant of threatening the immediate use of physical force because the "defendant had his hand in his pocket, implying he was armed with a weapon," "warned [the] victim 'not to be a hero . . . or [the defendant] was going to blow [the victim's] head off,'" and the victim "felt 'pretty nervous.'" 796 S.W.2d at 86. In *Duggar*, the court of appeals held that there was sufficient evidence of threatening physical force because the defendant "had a firm purpose, an unusual knowledge of the internal security system in the cash register, and a hand concealed in his jacket," giving the appearance that he had a gun.[2] 710 S.W.2d at 922.

In addition, the State argues that Brooks's conduct created the inference of a threat of immediate harm because he put the victim in fear. The State cites to *State v. Lybarger*, 165 S.W.3d 180, 186-87 (Mo. App. 2005), and *State v. Applewhite*, 771 S.W.2d 865, 867-68 (Mo. App. 1989), to support this proposition. In *Lybarger*, the court of appeals

---

[2] Brooks argues he did not make a threat because he gave no indication he had a weapon. Under the robbery statutes, the presence or suggestion of a deadly weapon or dangerous instrument is an element of only *first-degree* robbery. *See* § 569.020.1(2)-(4). To be guilty of either first- or second-degree robbery, a person must "forcibly steal[]." *Id.*; § 569.030.1. Although using or suggesting a weapon might amount to a threat and, thus, forcible stealing, a weapon is not necessary to sustain a second-degree robbery conviction.

held that there was sufficient evidence to support a conviction for second-degree robbery because the defendant told the victim, "This is a holdup," and kept his hand in his pocket as if he had a gun. 165 S.W.3d at 186-87. In *Applewhite*, the court of appeals held that there was sufficient force to support the charge of second-degree robbery where the defendant pushed a store manager, knocking him up against the exit as he fled. 771 S.W.2d at 868.

The evidence of the threat of immediate use of force in this case is less than in *Lybarger* and *Applewhite*. However, these cases demonstrate that the existence of a threat depends on whether a reasonable person would believe his conduct was a threat of the immediate use of physical force, which is an objective test. Banks are regular targets of robberies, and their employees have a heightened awareness of security threats. A demand for money in that context is an implicit threat of the use of force in and of itself. *See United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002) (stating that oral or written demands for money in a bank "carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result").

Here, there was such a threat of use of force. Brooks came into a bank wearing a wig, a cap, and sunglasses—the latter two in violation of the bank's policy prohibiting caps and sunglasses in the bank lobby. The use of force must also be "immediate" under § 569.010(1), and the threat here began to carry immediate consequences when Brooks gave a note to the teller demanding money: "50 & 100's, No Bait Bills, Bottom Drawer." When the teller walked away to retrieve the money from her station at the drive-through window, he slammed his hand hard on the counter and told her to "get back here,"

6

implying he wanted the money from the drawer in front of him and wanted it right then. He watched her movements when she went to retrieve money. A reasonable inference drawn from Brooks's actions was a threat of immediate physical force to her person should the teller not comply with his demand.

Brooks's disguise and note indicated his clear purpose to steal money. *Cf. State v. Clark*, 790 S.W.2d 495, 497 (Mo. App. 1990) (A note saying, "This is a holdup," means a forcible detention with intent to commit robbery and "implies the necessary force to carry out that purpose."). A reasonable person could infer that Brooks was hiding his identity because he was up to no good. *See Gilmore*, 282 F.3d at 402. He also exhibited an unusual familiarity with the bank's security procedures, specifically instructing the teller not to include bait money, which might cause a reasonable person to fear that Brooks would know if he or she did anything unusual to tip off authorities. *See Duggar*, 710 S.W.2d at 922 (noting the defendant's unusual knowledge of the security system, as well as the defendant's firm purpose and concealed hand in his jacket, in finding the defendant made an implicit threat).

Finally, Brooks's slamming of his hand forcefully on the counter certainly could be considered a threat of immediate physical force to A.E. should she refuse to comply. The reactions of the teller and those around her demonstrate how forceful the hand slap was and demonstrate why a reasonable person might be afraid as a result. One of the other tellers near A.E. testified this action also caused her to worry for A.E.'s safety, and another testified that she was afraid for her own safety. Naturally, A.E. felt "terrified" and that she "had to follow through with the note to keep [her] co-workers and [her]self

7

safe." *See Lybarger*, 165 S.W.3d at 186-87 (noting that the facts of *Duggar*, 710 S.W.2d at 922, including that the victim testified he "'felt threatened'" by the defendant's actions, led to the conclusion that the defendant implicitly threatened the use of immediate physical force). This conduct coupled with his specific demands regarding money implies an immediate consequence should she have ignored him.

## Conclusion

This Court concludes that this record supports that there was sufficient evidence that Brooks's actions constituted a threat of immediate physical force for the purpose of both defeating resistance to the theft of the bank's money and compelling its surrender. Affirmed.

_____
Zel M. Fischer, Judge

All concur.